UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:12-cr-21 |
| | ) | |
| JUSTIN HOLIFIELD | ) | Judge Collier/Carter |
| | ) | |

REPORT AND RECOMMENDATION

I. Introduction

The defendant's Motion to Suppress (Doc. 16) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant Justin Holifield moves to suppress any and all evidence obtained as a result of a traffic stop conducted on November 24, 2011 on the ground that the traffic stop and subsequent detention violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Because I find the traffic stop at issue was justified, I RECOMMEND the defendant's motion to suppress be DENIED.

II. Relevant Facts

On November 24, 2011, Chattanooga Police Officer Derek Roncin was on routine patrol in a residential area known to have a high incidence of break-ins around the holiday season. At around 1:00 in the morning, the officer witnessed a car approaching his patrol car very slowly from the opposite direction over the crest of a hill on Eldridge Road. Due to the vehicle's bright headlights shining directly at him, Roncin could not see the occupants inside. Street lights illuminated the road. Roncin turned into a driveway on the left. As the car passed by, ten to fifteen feet from the rear of Officer Roncin's marked patrol car, Roncin looked over his

1

shoulder and observed that the vehicle had a rear tag that was expired. Roncin testified that he always looks at vehicle tags while on patrol.

Roncin backed out onto Eldridge Street just as the vehicle turned left into a driveway a few houses up the road. Roncin pulled up and parked on Eldridge Road as defendant stepped out of the car. Roncin advised defendant to return to the vehicle and asked for his license and registration. Defendant, backing away, pointed at the house in whose driveway he was parked and stated that his documents were inside. However, while making this statement, defendant was looking at the house next door and he continued to step away from Officer Roncin. Roncin ordered defendant to stop, whereupon defendant turned and fled. Roncin yelled, "Stop, police!" and deployed his Taser, which had no effect on defendant. He chased defendant between two houses until they both tripped over a log. Roncin landed on top of defendant and struggled unsuccessfully to secure defendant's arms behind his back. Roncin had the defendant pinned face-down on ground with defendant's arms underneath him. Defendant then spontaneously uttered such statements as, "God help me, God help me. I'm done this time, I'm screwed." The officer felt a hard metal object in defendant's right hand underneath defendant. Thinking defendant might have a weapon, Roncin ordered defendant not to move and asked defendant if he had any weapons on him. Defendant replied that he "had stuff on him and in the vehicle." Officer Roncin advised defendant, "whatever you have on you, don't get it right now." The officer managed to radio for help and kept defendant pinned down for the approximately seven to eight minutes it took Officer Leroy Wright to arrive on the scene.

Officer Wright assisted in handcuffing defendant and took him back to the patrol car, where Wright patted down defendant and located a loaded .9 mm on defendant's person. During

2

this time, Officer Roncin remained to search for his flashlight, two magazines for his service weapon, and his glasses which he had lost during the pursuit. In the process of this search, Roncin discovered another gun, a loaded .32 chambered pistol, on the ground where he had struggled with defendant. Upon returning to the vehicles, Officer Roncin read defendant his *Miranda* rights in front of the patrol car. Afterwards, defendant stated that one of the guns was for personal protection and that the other belonged to defendant's mother. Defendant voluntarily gave a bottle with marijuana and prescription pills to Officer Wright. There were three other people in the vehicle defendant had been driving, but Officer Roncin stated he found they had not moved from the car when he returned from his pursuit of defendant. Roncin checked the registration on the car and found that it did not belong to defendant. Roncin also ran a check on defendant's driver's license and learned it was revoked. A further check revealed defendant had no permit to carry a concealed weapon, and defendant had no connection to the residence or location where he was detained. Defendant was arrested for driving with a revoked license, resisting arrest, possession of marijuana, and unlawful possession of a firearm since he had no concealed carry permit.

### III. Analysis

Defendant Holifield contends he was stopped unlawfully in violation of the Fourth Amendment and any evidence, including statements, should be suppressed as fruit of the poisonous tree.[1] *See Wong Sun v. United States,* 371 U.S. 471 (1963). "The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures."

---

[1] Defendant does not argue that his statements were procured in violation of his Fifth Amendment rights and, thus, the undersigned shall not address defendant's Fifth Amendment rights.

*United States v.* Lyon, 687 F.3d 754, 762 (6th Cir. 2012) (quoting *United States v. Luqman,* 522 F.3d 613, 616 (6th Cir.2008)).

In his motion, defendant argues that "he was profiled by law enforcement," that Officer Roncin could not have seen his license tag in the dark, and that Officer Roncin parked his patrol car directly behind defendant so as to block him in and thereby unlawfully detain him. Defendant further argues that in the event the undersigned finds Roncin did make a lawful traffic stop, Officer Roncin still lacked a lawful basis to physically seize him.

First, there is no evidence whatsoever that Officer Roncin profiled defendant, who is black, on the basis of his race. This argument must fail. Second, as the undersigned will address, Officer Roncin's conduct as it related to defendant on November 24, 2011 did not violate defendant's Fourth Amendment rights.

The evidence indicates Officer Roncin did not detain the defendant by parking behind his vehicle. Rather, Roncin parked on Eldridge Street. Nevertheless, when Officer Roncin asked the defendant to return to his vehicle and to produce his driver's license, Roncin was effectively instituting a traffic stop based on the expired tag. "'A police officer may effect a stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct.'" *United States v. Garrido*, 467 F.3d 971, 977-78 (6th Cir. 2006) (citing *United States v. Townsend,* 305 F.3d 537, 541 (6th Cir.2002); *see also*, *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (so long as the officer has probable cause to believe that a traffic violation has occurred, the resultant stop is not unlawful and does not violate the Fourth Amendment); *United States v. Ferguson*, 8 F. 3d 385, 391 (6th Cir. 1993) (A traffic stop is reasonable if there is probable cause to believe a traffic violation occurred and what else the officer suspected about the driver is irrelevant). It is a violation of state law for a vehicle not to display a valid license plate. *See* Tenn. Code Ann. § 55-4-101(f). Defendant argues Roncin

4

could not have seen his license plate in the dark the evening of November 24, 2011. However, Roncin testified there were street lights on the street and he was only ten to fifteen feet away from the vehicle defendant was driving. He also testified that when on patrol, he regularly looks at license plates to try and determine if the plates are expired and that on the night of November 24, 2011, he purposefully looked over his shoulder to check the license plate at issue. I conclude Roncin could see that the license plate was expired. Therefore, Roncin had probable cause to believe that the defendant had violated Tenn. Code Ann § 55-4-101(f) and had a sufficient basis to make a traffic stop.

Officer Roncin had barely begun the lawful traffic stop by asking defendant to return to his vehicle and to provide his driver's license when the defendant fled and then wrestled with Officer Roncin to prevent completion of the traffic stop. At that point, defendant had committed *another* crime for which he could be arrested. *See* Tenn. Code Ann. § 39-16-602. Tenn. Code Ann. § 39-16-602(a) provides,

> (a) It is an offense for a person to intentionally prevent or obstruct anyone known to the person to be a law enforcement officer, or anyone acting in a law enforcement officer's presence and at the officer's direction, from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another.

Once Roncin arrested defendant, he could lawfully search defendant incident to arrest. *Chimel v. California,* 395 U.S. 752, 763 (1969); *United States v. McCraney*, 674 F.3d 614, 618-619 (6th Cir. 2012).

Furthermore, when defendant fled Officer Roncin, who was attempting to effect the traffic stop, Roncin at that point had sufficient reasonable suspicion to effect a *Terry* stop. A police officer conducts what is known as a "*Terry*" stop or an investigatory stop when he or she briefly detains a person without probable cause in order to investigate a possible crime. *See*

5

*Terry v. Ohio*, 392 U.S. 1 (1968*); United States v*. *Lyon,* 687 F.3d 754,763-64 (6th Cir. 2012); *United States v. Bailey*, 302 F.3d 652 (6th Cir. 2002). In order to conduct an investigatory stop within constitutional boundaries, an officer must have a reasonable suspicion based on specific and articulable facts that the individual he seeks to detain is involved in criminal activity. *Terry,* 392 U.S. 1; *United States v. Arvizu*, 534 U.S. 266, 750 (2002); *Lyons*, 687 F.3d at 764. Reasonable suspicion is a "less demanding standard than probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). "Reasonable suspicion must be considered 'under the totality of the circumstances, considering all of the information available to law enforcement officials at the time.' " *Lyons*, 687 F.3d at 763 (quoting *Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir.2007). The government bears the burden to prove by a preponderance of the evidence that the police had reasonable suspicion to make the stop. *United States v. Torres-Ramos*, 536 F.3d 542, 552 (6th Cir. 2008).

In the instant case, defendant was driving in a residential area very slowly in the early morning hours just before Thanksgiving in an area known to have a high burglary rate, especially during the holidays. The tag on defendant's vehicle was expired. After Officer Roncin made a valid traffic stop and asked the defendant for his license, the defendant pointed at one house and said he had his documents in that house while he simultaneously looked at another house. Then he turned and took flight away from Roncin and continued to flee despite being ordered to stop. All these factors, with the flight being the most significant factor, gave Roncin reasonable suspicion to detain defendant for further investigation. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.") In *Wardlow,* the Court held officers were justified in making a *Terry* stop of the individual after the officers, who were patrolling an area known for heavy narcotics trafficking,

observed the defendant run from them. *Id.* at 124-25. Similarly, the undersigned concludes Officer Roncin was justified in chasing and stopping the defendant.

## IV. Conclusion

For the reasons stated herein, I conclude Officer Roncin did not violate defendant's Fourth Amendment rights by illegally detaining him and, therefore, defendant's motion to suppress, which is based solely on alleged illegal detentions, must fail. Accordingly, it is RECOMMENDED defendant's Motion to Suppress (Doc. 16) be DENIED.[2]

                                                  S /*William B. Mitchell Carter*
                                                  UNITED STATES MAGISTRATE JUDGE

---

[2]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).